UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| Kristen G., | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 18 CV 50121 |
| | ) Magistrate Judge Lisa A. Jensen |
| Andrew Saul, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM OPINION AND ORDER[1]

Plaintiff, who is now 53 years old, is seeking Social Security disability benefits based on the side effects from treatment for stage III breast cancer. These side effects include ongoing pain, neuropathy, fatigue, lymphedema, and psychological problems (anxiety and depression). An administrative law judge ("ALJ") concluded that plaintiff was not disabled by her date last insured ("DLI") of December 31, 2013. Although plaintiff was diagnosed with cancer and then had a double mastectomy before the DLI, some of her radiation and chemotherapy treatments continued some months past that date. Plaintiff raises three arguments for a remand. The Court finds that the first argument—that the listing analysis was flawed—is sufficient to order a remand.

## BACKGROUND

On June 13, 2013, plaintiff was diagnosed with breast cancer. R. 549. The next month, she underwent a double mastectomy. She then had chemotherapy and radiation treatments. The

---

[1] The Court will assume the reader is familiar with the basic Social Security abbreviations and jargon.

chemotherapy took place from October 2013 through February 2014 and the radiation from March to May 2014. *Id.*

Plaintiff has been treated by several doctors, but Dr. Einhorn was her primary oncologist. He treated her throughout the three-and-a-half-year period from diagnosis until the administrative hearing in December 2016. In June 2016, Dr. Einhorn referred plaintiff to Dr. Weiss, a pain management doctor, to treat plaintiff's chronic pain. R. 550. Dr. Weiss diagnosed plaintiff with lymphedema, chest wall pain, and drug-induced neuropathy in her extremities. *Id.* Plaintiff also received psychological treatment from Dr. Marianne Geiger, who completed a Mental Impairment Questionnaire supporting plaintiff's application. Ex. 4F.

On August 5, 2015, plaintiff filed her application for Title II disability benefits, alleging an onset date of June 13, 2013, which is the date of her cancer diagnosis. R. 15.

On March 1, 2017, the ALJ issued a 9-page decision finding plaintiff not disabled. At Step Two, the ALJ found that plaintiff's only severe impairment was the breast cancer—specifically "stage III breast cancer; status-post bilateral mastectomy and radiation therapy and chemotherapy." R. 17. At Step Three, the ALJ concluded that plaintiff did not meet or equal Listing 13.10. At Step Four, the ALJ found that plaintiff had the residual functional capacity ("RFC"), to do sedentary work subject to certain restrictions on reaching with her right arm and using her feet. The ALJ found that plaintiff's testimony about her symptoms was not credible because she had only sporadically complained about her symptoms before the DLI. The ALJ acknowledged that plaintiff's symptoms "significant[ly] worsened" in the early part of 2014, but the ALJ still believed that the record did not document the extent of plaintiff's alleged pain and limitations. R. 20. The ALJ placed much weight on observations taken from Dr. Einhorn's

treatment notes, such as his statement that she had normal examination findings and that she could "carry out work of a light or sedentary nature." R. 19.

## DISCUSSION

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence exists if there is enough evidence that would allow a reasonable mind to determine that the decision's conclusion is supportable. *Richardson v. Perales*, 402 U.S. 389, 399-401 (1971). Accordingly, the reviewing court cannot displace the decision by reconsidering facts or evidence, or by making independent credibility determinations. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

However, the Seventh Circuit has emphasized that review is not merely a rubber stamp. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002) (a "mere scintilla" is not substantial evidence). A reviewing court must conduct a critical review of the evidence before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). Even when adequate record evidence exists to support the Commissioner's decision, the decision will not be affirmed if the Commissioner does not build an accurate and logical bridge from the evidence to the conclusion. *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). Moreover, federal courts cannot build a logical bridge on behalf of the ALJ. *See Mason v. Colvin*, No. 13 C 2993, 2014 U.S. Dist. LEXIS 152938, at *19-20 (N.D. Ill. Oct. 29, 2014).

Plaintiff raises three arguments for remand: (i) the ALJ erred in the listing analysis; (ii) the ALJ failed to include certain restrictions in the RFC assessment and erroneously discounted

3

an opinion from Dr. Einhorn; and (ii) the ALJ erred in finding plaintiff not credible. The Court will begin with, and focus mostly on, the first argument.

In the five-step sequential evaluation process, a claimant may establish disability by relying on two methods of proof—either meeting a listing at Step Three or relying on an RFC analysis at Step Four. Meeting a listing is the more direct route, although often the more difficult one. The listings have been described as "a catalogue of 'automatic disabilities.'" *Mersel v. Heckler*, 577 F. Supp. 1400, 1406 n.15 (S.D.N.Y. 1984), *as quoted in* Carolyn A. Kubitschek and Jon C. Dubin, *Social Security Disability Law and Procedure in Federal Court*, p. 310 (2019 ed.). The listings are "automatic" in the sense that they rely on technical medical criteria, and do not require analysis of vocational factors or credibility. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) ("step three streamlines the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background"). A claimant proceeding under a listing has the burden of satisfying all of the relevant criteria. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004).

The listing at issue here (13.10) is part of the Section 13, which includes sections for different types of adult cancer. Listing 13.10 is directed at breast cancer and sets forth the following five alternative ways of being found disabled:

> A. Locally advanced cancer (inflammatory carcinoma, cancer of any size with direct extension to the chest wall or skin, or cancer of any size with metastases to the ipsilateral internal mammary nodes).
>
> OR
>
> B. Carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases.
>
> OR

> C. Recurrent carcinoma, except local recurrence that remits with anticancer therapy.
>
> OR
>
> D. Small-cell (oat cell) carcinoma.
>
> OR
>
> E. With secondary lymphedema that is caused by anticancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity. (See 13.00K4b.) Consider under a disability until at least 12 months from the date of the surgery that treated the secondary lymphedema. Thereafter, evaluate any residual impairment(s) under the criteria for the affected body system.

Plaintiff seems to be relying only on subpart (A).

> The ALJ provided the following explanation for why plaintiff did not meet this listing:
>
> The claimant's history of breast cancer does not meet or equal Section 13.10 of the Listing of Impairments, *Breast Cancer*, because there is no evidence of a locally advanced carcinoma; a carcinoma with metastases to the supraclavicular or infraclavicular nodes, to 10 or more axillary nodes, or with distant metastases; a recurrent carcinoma, except local recurrence that remits with antineoplastic therapy; a small cell (oat-cell) carcinoma, or secondary lymphedema that was caused by anticancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity. Based on the evidence, the claimant's impairment does not satisfy the requirements of the listing.

R. 18. This paragraph contains two sentences. The very long first sentence is a nearly-verbatim summary of the five subparts of 13.10. The second sentence is just a barebones conclusion.

Plaintiff raises various arguments attacking this discussion. These arguments can be grouped into two parts, a simpler outer shell containing a more complicated inner core. The simpler argument is that the ALJ's two-sentence discussion was inadequate because it lacked any analysis. The ALJ did not explain how he interpreted 13.10, which of the five subparts he considered, or what evidence he relied on. In short, there was no bridge from the evidence to the conclusion. As part of this first argument, plaintiff also complains that the ALJ did not rely on a medical opinion. It is undisputed that the ALJ did not call an expert at the hearing and that the

5

State Agency physicians did not explicitly acknowledge or analyze Listing 13.10 in their written opinions. (The Government argues that these doctors implicitly considered this listing.) Plaintiff argues that an expert was needed in particular to address the question of whether plaintiff equaled, as opposed to met, the listing requirements. Plaintiff relies on a line of Seventh Circuit cases holding that a remand is required in this type of situation. *See, e.g.*, *Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (remanding because the ALJ's two-sentence discussion contained "no analysis whatsoever" and was "the very type of perfunctory analysis we have repeatedly found inadequate"); *Barnett v. Barnhart*, 381 F.3d 664, 670 (7th Cir. 2004) ("the ALJ never consulted a medical expert regarding whether the listing was equaled").[2]

In its response brief, the Government makes only a passing attempt to defend the adequacy of the ALJ's explanation. After summarizing the ALJ's analysis, the Government then declares that the ALJ "reasonably concluded" the listing was not met. Dkt. #15 at 3. But this argument is itself conclusory. The Government does not explain why two boilerplate sentences could reasonably be considered an adequate analysis. It is not possible to discern any rationales even being hinted at in these sentences. The Government does not acknowledge, much less attempt to distinguish, either *Minnick* or *Barnett*, the two Seventh Circuit cases plaintiff claims are directly on point.

The second and more complicated layer to plaintiff's argument is her contention that, notwithstanding the ALJ's cursory discussion, the record contains substantial evidence showing that she met the listing. This argument is factually dense, and it anticipates the Government's harmless error argument. Plaintiff cites to a wide range of evidence containing many technical medical terms. Different terminology is used in the treatment records, and plaintiff in her

---

[2] *See also Kastner v. Astrue*, 697 F.3d 642, 647 (7th Cir. 2012); *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006).

opening brief uses a series of superficially similar terms that may have technical differences between them. For example, she describes her cancer variously as being "aggressive," "invasive," "infiltrating," and "inflammatory." Dkt. #8 at 5, 6. Like the ALJ, plaintiff relies on a layperson analysis. She tries to overcome this weakness by citing to multiple medical websites to explain why the evidence being cited is relevant. Despite some concern about these possible weaknesses in her argument, the Court finds that plaintiff has raised a *colorable* argument that she could meet subpart(A) of Listing 13.10—or, at least, that she has raised enough valid questions to necessitate the calling of an expert witness on remand and to require that the ALJ provide a more complete analysis.

      The Court will summarize plaintiff's argument, but for reasons explained below, the Court need not reach any bottom-line conclusion about whether plaintiff meets this listing. Plaintiff's argument is mostly factual, but she does raise a legal question about how subpart(A) should be interpreted. Plaintiff notes that subpart(A) contains two parts. There is the initial phrase "locally advanced cancer," which is then followed by a parenthesis containing three phrases—(i) "inflammatory carcinoma"; (ii) "cancer of any size with direct extension to the chest wall or skin"; *or* (iii) "cancer of any size with metastases to the ipsilateral internal mammary nodes." Relying on a single federal district court case from Ohio, plaintiff argues that the three parenthetical phrases were not meant to be separate additional requirements but were included as "alternative names and descriptors" to help laypersons understand the medical phrase "locally advanced cancer." *See Relph v. Commissioner of Social Security*, 2015 WL8767468, *7 (S.D. Ohio Dec. 15, 2015). Under this view, a claimant could meet the listing by satisfying either the general definition of "locally advanced cancer," *or* any of the three parenthetical

descriptions.[3] Based on her arguments, plaintiff appears to be arguing that she can satisfy both the general definition, as well the first two parenthetical descriptions. Plaintiff argues that the ALJ "misconstrued" this language by requiring plaintiff to not only meet the general definition, but also the three parenthetical descriptions. But this argument is speculative because the ALJ's two-sentence analysis provides no indication as to how the ALJ interpreted this language, which is one of the reasons why a remand is warranted. Other than the *Relph* case, plaintiff does not cite to any other case or regulatory guidance further explicating subpart(A).

Turning to the factual evidence, the Court notes that plaintiff set forth a number of facts in her opening brief. It is not clear in all instances exactly how they link back to and satisfy the subpart(A) tests. In any event, these facts and arguments are as follows:

- plaintiff's cancer had been advancing for at least a year before it was diagnosed in June 2013 (she claims the cancer's growth was missed on the prior year's mammogram)

- a June 2013 MRI report (R. 252) described her cancer as having "extensive abnormal enhancement"

- a June 2013 pathology report (R. 270) stated that the cancer was "immunoreactive," which plaintiff argues, based on a website, was evidence that the tumor was progressing to cites distant from the primary site

- in June 2013 Dr. Blume stated (R. 262) that plaintiff had "associated speculation and dimpling of the adjacent skin" in the area of the tumor

- a June 2013 biopsy showed "infiltrating carcinoma" affecting plaintiff's "axillary lymph nodes" and invasive carcinoma in her left breast featuring prominent dilation of ducts (R. 264, 267, 273)

- in the summer of 2013, Dr. Einhorn noted that plaintiff had a lump "on the right breast [that] is 2-3 centimeter[s]" (R. 257)

- plaintiff had respiratory problems in early 2013 (R. 656, 36)

---

[3] In a footnote, the *Relph* court stated that the phrase "locally advanced" was "a defined medical term referring to advanced stage cancer that has spread extensively within its area of origin, but has not metastasized to distant organs or tissue." *Id.* at *7, n. 10. This definition was taken from a website.

8

- June 2013 treatment notes showed a "micropapillary pattern" (R. 273), which plaintiff argues evidenced a "very aggressive form of breast cancer with a very high rate of lymph node metastasis"

- on July 18, 2013 plaintiff developed a "[p]ocket of fluid in [the] right axilla following surgery" (R. 587)

- on July 29, 2013, Dr. Einhorn noted that plaintiff's "chest wall [will need] time to heal" after the double mastectomy (R. 256)

- in the summer of 2013, plaintiff experienced "throbbing, stabbing, pressure burning, pruritic" pain in her chest wall that worsened after the surgery (R. 490)

- plaintiff had a rapid onset of a peau d'orange appearance (ridged or pitted skin) that was consistent with inflammatory cancer

- plaintiff had dense breast tissue (R. 263), which plaintiff argues is similar to most women with *inflammatory* breast cancer (an argument based on a website)

- plaintiff was referred to Dr. Pedro Rodriguez for "chest wall pain and edema" after the double mastectomy, and he diagnosed her with "lymphedema which is permanent and chronic [with no] surgical intervention" available to address this problem (R. 508)

- Dr. Rodriguez's diagnosis was consistent with Dr. Andrews's diagnosis regarding the onset of lymphedema in 2013 (R. 587)

- in October 2013, plaintiff was taking numerous pain medications, including carisprodol, dexamethasone, famotidine, compazol, and lidocaine, and these medications cause numerous side effects (according to website) (R. 362)

- plaintiff's pain and anxiety fluctuated as her medications were adjusted

Dkt. #8 at 3-8.

In response, the Government's primary argument is that any errors were harmless. According to the Government, if this case were remanded, the ALJ would find upon further analysis that plaintiff still did not meet Listing 13.10. As the Government recognizes, this Court can find errors harmless only if it can "say with great confidence" that the ALJ would reach the same decision on remand. Dkt. #15 at 5-66 (quoting *McKinzey v. Astrue*, 644 F.3d 884, 892 (7th

Cir. 2011)). After reviewing the arguments, the Court is not persuaded by the Government's argument.

The main problem with this argument is the Government's failure to discuss or engage with the arguments and evidence proffered by plaintiff. This is a glaring weakness. As for the legal questions, the Government does not respond to plaintiff's argument, based on the *Relph* case, about how subpart(A) should be interpreted. The Government does not mention *Relph*, or cite to any contrary cases, or otherwise express a view on this interpretive question. As for the factual evidence, the Government only responds to the last two items in the bullet-point list above, which state that plaintiff took numerous pain medications and that her pain fluctuated. The Government argues that listing 13.10 does not require an assessment of pain. Dkt. #15 at 6. With respect to this narrow argument, the Government may have a valid point. Pain is not specifically mentioned in subpart(A). It may be true that pain is irrelevant to whether, for example, plaintiff's breast cancer had advanced locally.[4] But even if the Government is right on this one issue, this still leaves the bulk of plaintiff's evidence unaddressed. If this Court were to adopt the Government's harmless error argument, the Court would have to do the work of sorting through and analyzing all the evidence set forth in the bullet-point list and then would have to conclude, with great confidence, that this evidence collectively does not meet—or equal—the 13.10 criteria. Such a determination would require consideration of technical findings from MRI reports and other documents, a task that would have to be done without the assistance of an expert. *See generally Akin v. Berryhill*, 887 F.3d 314, 317-18 (7th Cir. 2018) ("The MRI results

---

[4] At the same time, even this point is not self-evident. One could imagine an argument that pain in one area of the body is indirect evidence that the cancer has spread to that area. Specifically here, plaintiff complained about chest wall pain, raising a question as to whether the cancer had extended to the chest wall, which is one of the scenarios described in subpart(A). On the other hand, it may be that pain is considered by doctors to be a false or imperfect signal about whether the cancer has progressed to that region. At this point, the Court cannot answer these questions because they require medical expertise.

10

may corroborate Akin's complaints, or they may lend support to the ALJ's original interpretation, but either way the ALJ was not qualified to make his own determination without the benefit of an expert opinion.").[5]

The Government also argues that the ALJ's listing analysis was supported by the opinions of two State agency physicians, Dr. Albright and Dr. Pardo. *See* Ex. 1A, 3A. This argument rests on a series of attenuated inferences. To start with, the Government concedes that these two doctors, in the multi-page forms they completed, never mentioned listing 13.10 by name or otherwise indicated that they had reviewed this specific provision. However, they both indicated that they had considered two other listings (12.04 and 12.06). R. 70, 79. The fact that they mentioned these listings but did not mention 13.10 suggests, by negative implication, that they did not consider 13.10. The Government argues that one can assume that they did review 13.10 because they electronically signed a one-page bureaucratic form entitled "Disability Determination And Transmittal." R. 73, 81. This form contains minimal information, mostly a few bureaucratic codes. The Court finds this argument to be weak for several reasons. First, even if the Court were to accept the contention that these doctors analyzed listing 13.10 behind the scenes, the problem still remains that they provided no explanation, making it impossible for this Court to follow the path of their reasoning. Second, plaintiff argues that Dr. Albright's overall analysis rested on a mistaken fact. Specifically, Dr. Albright stated in her report that plaintiff had not even started chemotherapy until after the DLI. But this statement was wrong. Plaintiff began treatment in October 2013, several months before the DLI. The Government implicitly acknowledges that Dr. Albright made a mistake, but then argues that it should be viewed as

---

[5] It is true, as the Government notes, that plaintiff did not obtain any medical opinion supporting her argument that she met listing 13.10. Plaintiff certainly could have strengthened her case by doing so. However, the ALJ did not state that he relied on the absence of a medical opinion to draw an adverse inference against plaintiff.

11

harmless. Dkt. #15 at 5. But the Government again offers little in the way of concrete argument. Its only argument is to blame plaintiff for failing to explain why this mistake is important. However, the Court is not convinced that this was a harmless mistake. As discussed below, the ALJ made several statements suggesting that the timing of the onset of plaintiff's symptoms, in relation to the DLI, was a key factor in the decision.

For all the above reasons, the Court finds that a remand is required because the ALJ's listing analysis was cursory and not supported by a medical opinion. Having found that a remand is warranted on this first argument, the Court concludes that it is not necessary, nor would it be productive, to analyze the remaining arguments. The main reason is that a medical expert should be called on remand, and this testimony will likely shape and influence these arguments. Another reason is that the remaining arguments are less developed. For example, with regard to plaintiff's second argument, the Government states that it could not find the medical opinion from Dr. Einhorn that plaintiff claims to be relying on. The Court likewise could not find this opinion.

The Court, however, will offer a few additional observations to help guide the ALJ and the parties on remand. First, although this Court has discussed in some detail how the ALJ's Step Three listing analysis was cursory, the Court notes that the ALJ's subsequent Step Four RFC analysis was also short and, at times, conclusory. The RFC analysis was just over a page. As plaintiff points out, the ALJ failed to summarize much of plaintiff's medical history. For example, the ALJ never acknowledged plaintiff's treatment with Drs. Blume, Weiss, Rodriguez, and Andrews. The ALJ also did not summarize many of the facts listed in the bullet-point list. For example, the ALJ did not discuss any of the medications plaintiff was taking. The decision contains very little detail about her treatments. Plaintiff testified that she had "38 radiation

treatments over a six-week period" in 2013, and that she slept "80 percent of the time" after this treatment. R. 50. Her son and daughter also provided statements supporting plaintiff's allegations about the side effects from this treatment. *See, e.g.* R. 242 (youngest daughter: "I would wake up and hear her vomiting at four in the morning and [I] would run to hold her hair back then help her into the shower."). The ALJ also did not discuss plaintiff's daily activities. Finally, the ALJ only briefly considered the psychological evidence and dismissed Dr. Geiger's opinion because it was "rendered more than two years after the relevant period." R. 20. However, plaintiff's theory appears to be that the anxiety and depression were related in part to the overall effect of the cancer treatments.[6] The ALJ should explore these questions in greater depth. In sum, the ALJ's RFC analysis was minimal, and the ALJ failed to thoroughly consider several important lines of evidence. This case thus differs from those where a court has found that a later RFC analysis shored up a cursory listing analysis earlier in the decision. *See, e.g.*, *Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) (the ALJ's RFC discussion "provides the necessary detail to review the ALJ's step 3 determination in a meaningful way").

Second, the ALJ also was not clear on how much weight was given to the fact that some of plaintiff's treatment occurred after the DLI. The ALJ made statements suggesting that the primary flaw in plaintiff's case was that her cancer symptoms did not fully emerge until after the DLI. The ALJ observed generally that the record did not "document" that plaintiff had any side effects "prior to the expiration of her date last insured," but then the ALJ noted that the problems "significant[ly] worsened" thereafter. R. 19-20. The ALJ noted that plaintiff "first complained of numbness in January 2014." R. 20. In short, these symptoms emerged just a few weeks too late. At other times, the ALJ seemed to doubt that plaintiff's symptoms ever rose to a disabling level

---

[6] Although not mentioned by plaintiff, there is some evidence suggesting that plaintiff's psychological problems were related to alleged abuse from her husband, which began well before the cancer diagnosis. *See* R. 441.

13

and that the problem with her case was not really tied to the DLI cut-off. Yet another theory lurking in the record is the possibility that plaintiff's symptoms improved, perhaps as the cancer treatments ended. The Government alluded to this theory several times when it emphasized that Dr. Albright had stated in her opinion that plaintiff's symptoms "did not persist." R. 78; Dkt. #15 at 5. However, the Government did not further develop this argument. On remand, the ALJ should examine these questions more closely. This is another area where an expert witness could provide valuable expertise.

On remand, plaintiff's counsel also should specifically raise these and any other relevant issues with the ALJ at the administrative hearing. Although plaintiff has complained here about the ALJ's faulty listing analysis, the Court notes that plaintiff's counsel did not raise this argument either in the pre-hearing letter brief to the ALJ or mention it at the start of the hearing. *See* Ex. 8F.

## CONCLUSION

For these reasons, plaintiff's motion for summary judgment is granted, the government's motion is denied, and the decision of the ALJ is reversed and remanded for further consideration.

Date: October 16, 2019     By: *Lisa A.*
                               Lisa A. Jensen
                               United States Magistrate Judge